COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Bumgardner and Lemons
Argued at Salem, Virginia


CHRISTOPHER MICHAEL TOWNS

                                    MEMORANDUM OPINION* BY
v.          Record No. 0346-98-3    JUDGE SAM W. COLEMAN III
                                        MARCH 30, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                      Ray W. Grubbs, Judge

            Joseph Graham Painter, Jr. (Painter,
            Kratman, Swindell, Crenshaw & DeMuth;
            Painter & DeMuth, on briefs), for appellant.

            Eugene Murphy, Assistant Attorney General
            (Mark L. Earley, Attorney General, on
            brief), for appellee.


    Christopher Michael Towns was convicted in a bench trial of

felony child abuse in violation of Code § 18.2-371.1.  The

issues on appeal are (1) whether the trial court erred by

prohibiting the expert witness from giving his opinion whether

the injury was necessarily intentionally inflicted and (2)

whether the evidence was sufficient to convict Towns for

violating Code § 18.2-371.1.  The expert's opinion as to whether

an intentional act necessarily caused the injury infringed upon

the fact finder's responsibility to determine the ultimate issue

of fact, and therefore, was not admissible.  Accordingly, we

---

        *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

affirm the trial court's ruling.  Additionally, because the evidence, viewed in the light most favorable to the Commonwealth, Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), was sufficient to prove the charge beyond a reasonable doubt, we affirm the conviction.

BACKGROUND

Christopher Towns's and Laurie Miller's baby, at the age of four weeks, sustained a long oblique or "spiral" fracture of the shaft of the femur.

Laurie Miller testified that on the date of the injury, at 3:15 p.m., she left Towns alone with the baby at which time the child's leg was normal.  From 3:15 to 4:00, Miller showered while Towns slept on a couch.  Towns testified that he was wearing boots.  The baby was sleeping in her car seat facing Towns at his feet.  In his first statement to the investigating officer, at the hospital, Towns said that he was awakened by the child's screaming and that, becoming frantic, he called for Miller to come out of the shower.  His later written statement, his testimony at trial, Miller's written statement and Miller's testimony at trial all differed from Towns's initial statement in one respect.  In the later versions, Miller returned from the shower at 4:00 p.m. and woke Towns, rather than his calling for her to come from the shower, and the two talked for 15 to 20 minutes after which the baby awoke "extremely grumpy."  Towns

- 2 -

tried unsuccessfully to comfort the screaming child.  After the baby rejected a bottle and her pacifier, Towns carried the baby to the dining room table to check her diaper.  While checking the diaper, Towns noticed that she became more upset and that her leg, which had been normal an hour earlier, was motionless or limp.  Towns and Miller took the child to the emergency room where Doctor Sinclair Ross Mackay diagnosed the fracture.

Dr. Mackay testified as an expert witness.  He stated that the injury, "a long oblique fracture down the shaft of the [femur]" was very rare for a child of that age and was "commonly associated with abuse."  According to Dr. Mackay, the injury "requires a twisting motion, its usually a combination of angulation and twisting type motion to produce that type of fracture in the shaft of the femur."  Dr. Mackay further testified that the injury resulted from something in excess of a "slight twist of the leg."

Towns asked Dr. Mackay if he could "tell by the injury whether this was an intentional act."  Dr. Mackay answered "No."  The trial judge sustained the Commonwealth's objection for the reason that the question called for an opinion as to an ultimate issue of fact.  The defendant was permitted to inquire of Dr. Mackay whether spiral fractures can be caused by accidental means.

ANALYSIS

The trial court did not err in prohibiting Towns from asking whether Dr. Mackay could "tell from the injury whether this was an intentional act." "'[W]hile an expert witness may be permitted to express his opinion relative to the existence or nonexistence of facts not within common knowledge, he cannot give his opinion upon the precise or ultimate fact in issue, which must be left to the [fact finder] for determination.'" See Llamera v. Commonwealth, 243 Va. 262, 264, 414 S.E.2d 597, 598 (1992) (quoting Webb v. Commonwealth, 204 Va. 24, 33, 129 S.E.2d 22, 29 (1963)).

The factual evidence proved that the child sustained an injury during a time frame in which she was exclusively within the care of Towns. The principle issue was whether that injury was the result of an intentional or willful act by Towns in violation of Code § 18.2-371.1. The expert could, and did, testify as to the mechanics of how such an injury occurs, but it was the province of the fact finder to determine whether an intentional act necessarily caused the injury. See, e.g., Knick v. Commonwealth, 15 Va. App. 103, 108, 421 S.E.2d 479, 482 (1992) (allowing forensic pathology expert to testify as to the mechanics of a shooting but prohibiting his opinion as to whether it was an accident). The question as to whether an intentional act necessarily caused the injury asked the expert

witness to give an opinion as to whether this specific injury was intentionally inflicted. That is the ultimate factual issue that the fact finder must determine. The trial court did not err in excluding the expert witness' opinion whether the injury was caused by an intentional act.

Towns also contends that the evidence was insufficient to prove intent as required by Code § 18.2-371.1. Towns argues that the Commonwealth's circumstantial evidence supports a reasonable hypothesis of innocence and, therefore, the evidence does not rise to the level of proof beyond a reasonable doubt. The suggested reasonable hypothesis of innocence is that the injury resulted from an accident.

When an appeal challenges the sufficiency of the evidence "we must view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth." Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 385 (1984). "When, from the circumstantial evidence it is just as likely, if not more likely, that a reasonable hypothesis of innocence explains the accused's conduct, the evidence cannot be said to rise to the level of proof beyond a reasonable doubt." Betancourt v. Commonwealth, 26 Va. App. 363, 373, 494 S.E.2d 873, 878 (1998) (internal quotations omitted). Thus, when the Commonwealth relies upon circumstantial evidence to prove guilt, the Commonwealth "must exclude all reasonable

conclusions inconsistent with guilt." See Higginbotham, 216 Va. at 353, 218 S.E.2d at 537.

However, the Commonwealth need not exclude every possible theory of innocence, rather it must exclude only those which flow reasonably from the facts and raise a reasonable doubt of guilt. See Payne v. Commonwealth, 216 Va. 265, 272, 217 S.E.2d 870, 875 (1975). Whether a particular hypothesis is reasonable, is a question of fact binding on appeal unless plainly wrong. See Lovelace v. Commonwealth, 27 Va. App. 575, 586, 500 S.E.2d 267, 273 (1998).

Moreover, the Commonwealth is not required to actively negate every reasonable theory of innocence, instead it is sufficient if the evidence as presented has the effect of excluding those theories. See Orange v. Commonwealth, 191 Va. 423, 443, 61 S.E.2d 267, 276 (1950). If, based on the Commonwealth's evidence, the fact finder justifiably could have excluded all reasonable hypotheses of innocence, or determined that any possible hypothesis of innocence was less than reasonable, then we must affirm. We defer to the fact finder because the inferences to be drawn from proven facts are the province of the fact finder so long as they are reasonable and justified. See Higginbotham, 216 Va. at 353, 218 S.E.2d at 537.

If, as here, the appellant presents an hypothesis of innocence on appeal, the burden is on the appellant to show that

no reasonable finder of fact, based on the evidence presented, could have excluded that hypothesis.  See generally Johnson v. Commonwealth, 12 Va. App. 391, 396, 404 S.E.2d 384, 387 (1991) ("The burden is on the party who alleges reversible error to show by the record that reversal is the remedy to which he is entitled.").  It is in this context that the Virginia Supreme Court has said that the hypotheses which the Commonwealth must exclude are those that actually flow from the evidence rather than those that may arise from the imagination of counsel.  See, e.g., Black v. Commonwealth, 222 Va. 838, 841, 284 S.E.2d 608, 609 (1981).  Thus, to prevail, appellant must show that the facts as established in the record, viewed in the light most favorable to the Commonwealth, would not permit a reasonable fact finder to reject appellant's proposed hypothesis.

Here, the evidence proved that the baby's leg was normal at 3:15 p.m.; that between 3:15 and 4:00 p.m., the baby was alone with Towns; that between 4:00 and 4:20 p.m., the baby slept next to Miller and Towns; and that shortly after the baby awoke at 4:20, while changing the baby's diaper, Towns reported to Miller that the baby's leg was limp and motionless.  The evidence further established that the fracture injury was one that is extremely rare, usually associated with abuse, and requires a twisting of the limb with considerable force.  Further, the

evidence proved that Towns presented conflicting accounts regarding his discovery of the child's injury.

Considering the size and age of the child and amount of force necessary to cause the child's spiral fracture, the fact finder could reasonably reject the hypothesis that an accident caused the child's injury. Moreover, no evidence was presented that an accident had occurred. The fact finder was entitled to determine that Dr. Mackay's evidence excluded an accident as a reasonable explanation for the injury. The evidence proved that the spiral injury, which could only have been caused by the application of considerable force in twisting the leg, occurred when the child was in the exclusive custody of the defendant. The fact finder could reasonably determine from these circumstances that Towns intentionally inflicted the injury upon the child. "The facts . . . admitted of inferences of guilt more probable and natural than any reasonable hypothesis of innocence, and warranted" the trial judge in rejecting an hypothesis of accidental injury. See Toler v. Commonwealth, 188 Va. 774, 782, 51 S.E.2d 210, 214 (1949).

The Commonwealth presented sufficient evidence for the fact finder to exclude any hypothesis that the injury resulted from an accident. Accordingly the conviction is affirmed.

Affirmed.